**E-FILED**
Wednesday, 03 November, 2004  04:38:58 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| CHS INC., formerly known as CENEX HARVEST STATES COOPERATIVES, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Cause No.  03-3263 |
| CHRISTOPHER BICKHAUS, | ) ) | |
| Defendant. | ) | |

**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Defendant, **CHRISTOPHER BICKHAUS**, by his attorneys, **SCHMIEDESKAMP,**

**ROBERTSON, NEU & MITCHELL**, submits this response to the Plaintiff's motion for summary

judgment, pursuant to Fed. R. Civ. P. 56 and C.D. Local Rule 7.1(D)(2).

**INTRODUCTION**

The Defendant, Christopher Bickhaus ("Bickhaus"), is the former President of Fastop, Inc.

("Fastop"), a bankrupt corporation which formerly owned and operated several convenience stores

with gas stations in Illinois and Missouri.  On May 21, 2002, Fastop entered into an agreement with

the Plaintiff to purchase refined fuel products and lubricating oils from a supplier of the Plaintiff.

(See Affidavit of Christopher Bickhaus, Exhibit A, ¶4).  On June 14, 2002 and on March 26, 2003,

Fastop entered into loan agreements with the Plaintiff for $70,500 and $1,360,697.83, respectively,

and executed promissory notes for each loan.  (See Affidavit of Christopher Bickhaus, Exhibit A,

¶5).  All of these documents were signed by Christopher Bickhaus, as President of Fastop.  (See

Affidavit of Christopher Bickhaus, Exhibit A, ¶5).

In 2002, Christopher Bickhaus, as President of Fastop, signed a Guaranty of Credit (the "2002 guaranty"). (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7). It is this 2002 guaranty at issue. According to the Plaintiff, Bickhaus signed the 2002 guaranty in his individual capacity and, thus, is personally liable to the Plaintiff for the debt incurred by Fastop. However, Bickhaus signed the 2002 guaranty as follows: "Chris Bickhaus, as President, Fastop, Inc." (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7; Exhibit L attached to the Plaintiff's motion for summary judgment). Later, in 2003, the Plaintiff asked Bickhaus to sign a second guaranty, this time specifically referred to by the Plaintiff as a "personal guarantee," to secure the debt incurred by Fastop in the March 26, 2003 promissory note. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶11-12; Bickhaus Exhibit 1).

According to the Plaintiff, Bickhaus's signature on the 2002 guaranty "as President of Fastop" was probably just an "inadvertent error." (See Affidavit of Christopher Bickhaus, Exhibit A, ¶10; Exhibits F and M attached to the Plaintiff's motion for summary judgment). Contrary to the Plaintiff's assumption, Bickhaus did not inadvertently sign the 2002 guaranty as "President of Fastop." (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10). Bickhaus intended to sign the 2002 guaranty as President of Fastop, and intended to sign the 2002 guaranty in a representative capacity as the President of Fastop, and not in his individual capacity. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10). This was communicated to CHS prior to his executing the 2002 guaranty as President of Fastop, Inc. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7). Subsequently, in more than one conversation with Scott Beiswenger, a representative of the Plaintiff, Bickhaus informed Beiswenger that it was his intent to sign the 2002 guaranty only as Fastop's representative. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶9). Yet, on November 19, 2003,

2

the Plaintiff sued Bickhaus, in his individual capacity, to recover over $1.4 million allegedly owed

by Fastop.

## RESPONSE TO ALLEGEDLY UNDISPUTED MATERIAL FACTS

On October 6, 2004, the Plaintiff filed a motion for summary judgment asking this court to

construe the 2002 guaranty signed by Christopher Bickhaus, as President of Fastop, Inc., as the

personal guaranty of Christopher Bickhaus, the individual.  As part of its motion for summary

judgment, the Plaintiff submitted a statement of purported undisputed material facts.  In support of

its motion for summary judgment and statement of undisputed material facts, the Plaintiff submitted

only the declaration of Rick Cummings, the Plaintiff's Director of Marketing and Retail

Development.  Both the statement of undisputed material facts and the declaration of Rick

Cummings assume that Bickhaus is individually liable for Fastop's debt; both repeatedly state that

Bickhaus individually guaranteed that debt; and both consist primarily of legal conclusions and

opinions, not factual statements as required by the Federal Rules of Civil Procedure and the Local

Rules of this court.  In a separate motion, Bickhaus has asked that the statement of undisputed

material facts and declaration of Rick Cummings be stricken.

### A.    Undisputed Material Facts

The following numbered statements from the Plaintiff's statement of undisputed material

facts are undisputed and material:  1, 2, 3, 6.

### B.    Material Facts Claimed to be Disputed

The following statements from the Plaintiff's statement of undisputed material facts are

disputed and material:  4, 7, 9, 10, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22.  Specifically, concerning

these facts, the Defendant states as follows:

4.      The Defendant disputes statement No. 4 because the Plaintiff produces no documentation to demonstrate that all "just credits" were given to Fastop pursuant to the terms of the June 14, 2002 or March 26, 2003 notes executed on behalf of Fastop, as stated by the Plaintiff.

7.      The Defendant disputes statement No. 7 because the Plaintiff produces no documentation to demonstrate that all "just credits" were given to Fastop pursuant to the terms of the June 14, 2002 or March 26, 2003 notes executed on behalf of Fastop, as stated by the Plaintiff.

9.      The Defendant disputes statement No. 9, because the Plaintiff produces nothing specifically stating that Fastop was required to purchase 11,000,000 gallons of refined fuel products from the Plaintiff in the first year.  (See Exhibit C attached to Plaintiff's motion for summary judgment).

10.     The Defendant disputes statement No. 10, because the Plaintiff produces nothing specifically stating that Fastop was required or obligated to purchase 11,000,000 gallons of refined fuel products from the Plaintiff in the first year.  Fastop, thus, could not fail to perform an obligation that the Plaintiff has not proven to exist in the first place.  In addition, this statement amounts to a legal conclusion concerning the obligation incurred by Fastop in the Participation Agreement.

12-17.  The Defendant disputes statements 12 through 17 for the reasons expressed in the Defendant's motion to strike the Plaintiff's statement of undisputed facts and the declaration of Rick Cummings, and in the memorandum of law supporting that motion.  These statements are legal conclusions and opinions that simply assume Bickhaus signed the 2002 guaranty in his individual capacity.  These statements are not facts, let alone undisputed facts.  They are not supported by evidence, but are simply regurgitations of allegations in the Plaintiff's amended complaint which assume the enforceablility of the 2002 guaranty.  Specifically, Bickhaus contests whether the 2002

4

guaranty is enforceable as a matter of law and sets forth undisputed evidence that he did not sign the 2002 guaranty in his personal capacity and did not intend to personally obligate himself to satisfy Fastop debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10). Moreover, Bickhaus' position that he was not signing the 2002 guaranty personally was communicated to CHS at the time of signing and later in 2003. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10).

19-21. The Defendant disputes statements 19 through 22 for the reasons expressed in the Defendant's motion to strike the Plaintiff's statement of undisputed facts and the declaration of Rick Cummings, and in the memorandum of law supporting that motion. These statements are legal conclusions and opinions that assume Bickhaus signed the 2002 guaranty in his individually capacity. These statements are not facts, let alone undisputed facts. They are not supported by evidence, but are simply regurgitations of allegations in the Plaintiff's amended complaint which assume the enforceablility of the 2002 guaranty. Specifically, Bickhaus contests whether the 2002 guaranty is enforceable as a matter of law and sets forth undisputed evidence that he did not sign the 2002 guaranty in his personal capacity and did not intend to personally obligate himself to satisfy Fastop debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10). Moreover, Bickhaus' position that he was not signing the 2002 guaranty personally was communicated to CHS at the time of signing and later in 2003. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10).

22.    The Defendant disputes statement No. 22, because it is a legal conclusion, and the Plaintiff has not produced any documentation of attorneys' fees or legal expenses incurred by the Plaintiff as a result of any action or inaction of the Defendant.

**C.**    **Facts Claimed to be Immaterial to the Motion**

The following numbered statements from the Plaintiff's statement of undisputed material facts are irrelevant to the Plaintiff's motion for summary judgment: 5, 8, 11, 18.  Specifically, concerning these facts, the Defendant states as follows:

Statements No. 5, 8, and 11 are irrelevant because claims filed by the Plaintiff in Fastop's bankruptcy proceedings are not proof that those claims are valid and accurate claims.  The Plaintiff has not provided copies of any court orders finding those claims to be valid claims against Fastop the corporation.

Statement No. 18 is irrelevant because there is no proof that the Defendant individually guaranteed any debt of Fastop.  To the contrary, it was the Defendant's intent to sign the 2002 guaranty only as a representative of Fastop.   (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10).  Thus, there is no need for the Defendant to notify the Plaintiff of any intent to terminate a nonexistent individual obligation under the guaranty.

**D.**    **Additional Material Facts Claimed to Defeat the Motion for Summary Judgment**

1.      In 2002, the Defendant, Christopher Bickhaus, signed the 2002 guaranty as President of Fastop.  (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7, 8; Exhibit L attached to the Plaintiff's motion for summary judgment).

2.      The Defendant, Christopher Bickhaus, signed the 2002 guaranty only in a representative capacity, not in an individual capacity, by signing the guaranty as President of Fastop. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7, 8).

3.    The Defendant, Christopher Bickhaus, intended to and signed the 2002 guaranty only as a representative of Fastop, not in any individual capacity, and not to personally guaranty any debt incurred by Fastop. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10).

4.    The Defendant made known to the Plaintiff his intent that he was signing the 2002 guaranty only in a representative capacity, not as an individual. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10).

5.    Bickhaus signed the guaranty at issue in this case as the President of Fastop ("the 2002 guaranty") in the presence Stuart Wilson, a representative of CHS. Prior to signing the 2002 guaranty, Bickhaus told Wilson he was not signing the 2002 guaranty personally. Wilson expressed concern that Fastop would not receive fuel from CHS if I did not sign the 2002 guaranty in my personal, individual capacity. Bickhaus reiterated that he would only sign in his capacity as an officer, specifically President, of Fastop, Inc., as indicated by the language "as President of Fastop, Inc." after his signature. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7; Exhibit L attached to the Plaintiff's motion for summary judgment).

6.    The Plaintiff, in a letter to Christopher Bickhaus dated June 20, 2003, asked Bickhaus to sign another guaranty, this time explicitly referred to as a "personal guaranty" of Fastop's debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶11, Bickhaus Exhibit 1).

7.    Bickhaus never signed the proposed personal guaranty requested by the Plaintiff on June 20, 2003. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶11).

8.    The Plaintiff provided a form for the personal guaranty requested on June 20, 2003, which differs from the 2002 guaranty by explicitly noting above the signature line that Bickhaus, had

7

he signed, would have signed the new guaranty in his individual capacity to personally guaranty the debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶11-13, Bickhaus Exhibit 1).

9. The 2002 guaranty, signed by Bickhaus as President of Fastop, had no preprinted notation that Bickhaus was signing in an individual capacity or that he would be personally guaranteeing Fastop's debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶13, Bickhaus Exhibit 1).

10. There is no language in the body of the 2002 guaranty stating that Bickhaus is assuming any personal liability, and Bickhaus's name never appears in the body of the document. (See Exhibit L attached to the Plaintiff's motion for summary judgment).

11. The 2002 guaranty refers liability only to "the undersigned." (See Exhibit L attached to the Plaintiff's motion for summary judgment).

12. The 2002 guaranty never identifies "the undersigned" as Christopher Bickhaus, the individual. (See Exhibit L attached to the Plaintiff's motion for summary judgment).

13. The "undersigned" on the 2002 guaranty is "Chris Bickhaus, as President, Fastop, Inc." (See Exhibit L attached to the Plaintiff's motion for summary judgment).

## APPLICABLE LAW

In its motion for summary judgment, the Plaintiff claims that Minnesota law applies, because the 2002 guaranty provides that all rights, obligations, duties and disputes arising under the guaranty "shall be construed in accordance with, and governed by, laws of the state of Minnesota." However, the Plaintiff chose to file suit in the United States District Court for the Central District of Illinois, and Illinois will follow the contract's choice of law provision only if the contract is valid and if following the other state's law will not violate any fundamental public policy of Illinois. Thomas

8

v. Guardsmark, Inc., 381 F.3d 701, 705 (7th Cir. 2004). In this case, Illinois law applies for two reasons.

First, if the court applies Minnesota law as argued by the Plaintiff in this case, it threatens to violate the long-standing policy and law in Illinois that signing a contract as a representative of a corporation binds only the corporation, not the individual. See Wottowa Insurance Agency, Inc. v. Bock, 104 Ill.2d 311, 315, 472 N.E.2d 411 (1984). Second, the contract is ambiguous and therefore not presumptively valid. As explained below, under Illinois law, Bickhaus is not personally liable under the 2002 guaranty.

Finally, even if Minnesota law does apply, the Plaintiff is not entitled to summary judgment. The law of Minnesota does not favor the Plaintiff as clearly as the Plaintiff claims, and the guaranty has an ambiguity which must be resolved by the trier of fact.

## ARGUMENT

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). As the party seeking summary judgment, the Plaintiff has the burden of providing the court with the basis for granting its motion, and the Plaintiff must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. at 323. In determining whether a genuine issue of material fact exists, the court must consider the evidence in

9

a light most favorable to the non-moving party. <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

Here, the Plaintiff has not met its burden of demonstrating that no genuine issue of material fact exists. Because there are genuine issues of material fact, summary judgment is not proper.

## I.     THE PLAINTIFF FAILED TO CARRY ITS BURDEN OF PROVING NO GENUINE ISSUE OF MATERIAL FACT EXISTS.

The Plaintiff concludes there is no issue whether Bickhaus signed the 2002 guaranty in his individual capacity intending to be personally liable for the debts of Fastop. However, the Plaintiff presents no admissible evidence to support this conclusion. The Plaintiff submits the affidavit of Rick Cummings, one of its own employees, and the 2002 guaranty. In his affidavit, Rick Cummings makes the following statements:

- "Bickhaus executed and delivered to CHS a Guaranty of Credit."

- "Bickhaus, as guarantor of the payment of the unpaid amount of $31,120.89 under the June 14, 2002 Note, has failed and refused to pay the amount of $31,120.89 due and owing pursuant to the terms of the Guaranty."

- "Bickhaus, as guarantor of the payment of the unpaid amount of $1,243,553.13 under the March 26, 2003 Note, has failed and refused to pay the amount of $1,243,553.13 due and owing pursuant to the terms of the Guaranty."

- "Bickhaus, as guarantor of the payment of the overpaid amount of $152,987.82 in First Year Incentive Money, has failed to pay the overpaid amount of $152,987.82 due and owing pursuant to the terms of the Guaranty."

- "CHS has incurred, and will continue to incur, attorneys' fees and other legal expenses, in connection with its efforts to enforce the Guaranty and collect the guaranteed amounts from Bickhaus."

<u>See</u> Declaration of Rick Cummings, attached as Exhibit 1 to the Plaintiff's motion for summary judgment, ¶15, 17-20.

Affidavits must be "made on personal knowledge," and "set forth such *facts* as would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). These statements are merely legal conclusions, not the statements of fact required by Rule 56(e). In fact, it appears that in many paragraphs, the affidavit simply mirrors the allegations of the Plaintiff's complaint. It is up to the trier of fact, not the Plaintiff's witness, to determine whether Bickhaus personally guaranteed Fastop's debt.

The Plaintiff makes similar conclusory assertions in its statement of undisputed material facts. <u>See</u> Plaintiff's statement of undisputed material facts, ¶12-17, 19-22. As stated in the Defendant's motion to strike both the statement of undisputed material facts and the declaration of Rick Cummings, this court must disregard such conclusory statements. <u>See Pfeil v. Rogers</u>, 757 F.2d 850, 862 (7th Cir. 1985). "Such showing constitutes merely expressions of affiant's opinion and his legal conclusion," and as such, the statements cannot form the basis for the entry of summary judgment in the Plaintiff's favor. <u>G.D. Searle & Co. v. Chas. Pfizer & Co.</u>, 231 F.2d 316, 318 (7th Cir. 1956). There is simply no evidence to support the conclusions of law that the Plaintiff attempts to present as "undisputed fact." The alleged "facts" do not meet the Plaintiff's burden of establishing that it is undisputed that Bickhaus personally guaranteed Fastop's debt.

Conversely, the Affidavit of Christopher Bickhaus presents undisputed evidence that he did not sign the 2002 guaranty in his personal capacity and that CHS was aware that Bickhaus had no intent to personally guarantee Fastop's debt. (<u>See</u> Affidavit of Christopher Bickhaus, <u>Exhibit A</u>, ¶7-10). Further, the plain language of the 2002 guaranty does not contain language that the signer is

11

"personally liable". (See Exhibit L to the Plaintiff's motion for summary judgment). Finally, the

2002 guaranty clearly shows that the Defendant signed "as President of Fastop, Inc.". (See Exhibit

L to the Plaintiff's motion for summary judgment). Thus, the Plaintiff cannot demonstrate that it is

undisputed that the 2002 guaranty was personally guaranteed by the Defendant. In the face of these

material issues of fact, the Plaintiff's motion for summary judgment should be denied.

## II.    UNDER ILLINOIS OR MINNESOTA LAW, THE PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT.

As stated above, Illinois law should apply in this case. However, even if Minnesota law does

apply, the Plaintiff is not entitled to summary judgment. The Plaintiff misinterprets Minnesota law

and ignores applicable Minnesota precedent.

### A.    Illinois Law Bars the Entry of Summary Judgment in the Plaintiff's Favor.

In Illinois, "[w]hen an officer signs a document and indicates next to his signature his

corporate affiliation, then absent evidence of contrary intent in the document, the officer is not

personally liable." Wottowa Insurance Agency, Inc. v. Bock, 104 Ill.2d 311, 315, 472 N.E.2d 411

(1984); Sullivan v. Cox, 78 F.3d 322, 326 (7th Cir. 1996). Moreover, if the language in the

document conflicts with the apparent representation given by the corporate officer's signature, an

issue of fact exists which prevents the entry of summary judgment in the Plaintiff's favor. See

Sullivan, 78 F.3d at 326, 327; Addison State Bank v. National Maintenance Management, Inc., 174

Ill. App. 3d 857, 860, 529 N.E.2d 30 (2d Dist. 1988).

In Sullivan, the court noted that it was clear from the face of the contract signed that Cox

signed in a representative capacity, because his signature was followed by the word "President" and

the name of the corporation. Because "[o]nly an officer who signs his name without more may be

12

individually liable on the contract," Cox's signature clearly revealed his intent not to be personally bound. Sullivan, 78 F.3d at 326.

In Addison, a guaranty agreement was signed by "Clayton P. Boyd Pres." The plaintiff sought summary judgment against Clayton Boyd individually on the guaranty agreement. The circuit court granted summary judgment in the plaintiff's favor, but the appellate court reversed because a genuine issue of material fact existed regarding the capacity in which Boyd signed the guaranty agreement. "Both [Boyd's] signature with the abbreviation 'Pres.' following it and the [his] affidavit stating he signed the guaranty agreement in his representative capacity rather than his personal capacity create an issue of fact as to whether [Boyd] signed in a representative capacity." Addison, 174 Ill. App. 3d at 860. Therefore, the intent of the parties is an issue of fact for the trier of fact. See Addison, 174 Ill. App. 3d at 860.

Furthermore, a contract is ambiguous if it is reasonably susceptible to more than one meaning, and such contracts are construed against the drafter. Zwayer v. Ford Motor Credit Co., 279 Ill. App. 3d 906, 910, 665 N.E.2d 843 (1st Dist. 1996). If the language in the body of a guaranty agreement conflicts with the representation given by the agent's signature, the document is reasonably susceptible to more than one meaning and extrinsic evidence must be examined to determine the intent of the parties. Addison, 174 Ill. App. 3d at 860. However, it is not the court's duty to weigh the extrinsic evidence and resolve such issues of fact. Addison, 174 Ill. App. 3d at 859.

Here, Bickhaus signed the 2002 guaranty as "Chris Bickhaus, as President, Fastop, Inc." The body of the guaranty, however, states that the "undersigned" is liable for the unpaid debts of Fastop. (See Exhibit L attached to the Plaintiff's motion for summary judgment). Bickhaus has provided an

13

affidavit stating under oath that he signed the guaranty in his representative capacity and did not intend to be personally liable for Fastop's debts. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10). In addition, there is evidence that the Plaintiff was aware that Bickhaus did not intend to be personally bound by the guaranty. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10). Therefore, under Illinois law, a genuine issue of material fact exists to preclude the entry of summary judgment in the Plaintiff's favor.

**B.     Under Minnesota Law, the Plaintiff is Not Entitled to Summary Judgment.**

Even if Minnesota law does apply to this case, the Plaintiff still is not entitled to summary judgment. In fact, the Plaintiff misconstrues Minnesota law to support the entry of summary judgment in its favor.

*1.     The Plaintiff improperly seeks to apply the law of other jurisdictions.*

According to the Plaintiff, Minnesota courts would unequivocally find that Bickhaus personally guaranteed Fastop's debt, despite his signing the guaranty as Fastop's president. However, the Plaintiff then inexplicably supports this argument with cases from numerous other jurisdictions, not just opinions from Minnesota courts. The Defendant submit that if the Plaintiff requests the application of Minnesota law, then Minnesota law, and not the law of other jurisdictions, should be considered. If the law of other jurisdictions is considered, then the only other jurisdiction that should be considered is Illinois (the forum state, the Defendant's home state, and the state of Fastop's incorporation) as cited above.

14

2.     *The Minnesota cases cited by the Plaintiff do not support the Plaintiff's position.*

Even assuming *arguendo* that only Minnesota law applies to this case, the Plaintiff's argument that Bickhaus personally guaranteed Fastop's debt is without merit. The Plaintiff relies primarily on the decision of the Minnesota Supreme Court in Charmoll Fashions, Inc. v. Otto, 248 N.W.2d 717 (Minn. 1976). At page 11 of its motion for summary judgment, the Plaintiff points to what it deems similarities between the guaranty agreement in Charmoll and the one in this case. However, what the Plaintiff does not tell the court is that, in Charmoll, the corporate officers signed only their names to the guaranty. Unlike Bickhaus, they did not follow their signatures with "President" or any other corporate title or identity. Charmoll, 248 N.W.2d at 215. Further, the guaranty agreement in Charmoll provided that "certain individuals" jointly and severally guaranteed the corporation's debt. Charmoll, 248 N.W.2d at 217. Thus, in Charmoll, it was clear that the corporate officers intended to be held individually liable for the debt if the corporation did not pay. Here, it is not clear from the face of the guaranty that Bickhaus intended to be held liable for Fastop's debt. Charmoll does not provide the Plaintiff with the manifest right to summary judgment it claims.

In Johnson Brothers Wholesale Liquor v. Otto's Liquor, Inc., 194 N.W.2d 592 (Minn. 1972), another case relied on by the Plaintiff for the proposition that Bickhaus gave it a personal guaranty, the court merely states that the president of the company, Mrs. Otto, "signed the document [guaranty]." There is no indication whether Mrs. Otto signed just her name, or identified herself as the corporation's president. Johnson Brothers, 194 N.W.2d at 592. Although, the court found that there would be no purpose to the corporation guaranteeing its own debts, we cannot tell from the one-page, three-paragraph opinion whether the facts in Johnson Brothers are even remotely similar

15

to those here. In addition, the <u>Johnson Brothers</u> court did not grant summary judgment for the plaintiff; rather, the case was remanded for a new trial. <u>Johnson Brothers</u>, 194 N.W.2d at 592. Thus, summary judgment in favor of the Plaintiff cannot be based on the Minnesota court's opinion in <u>Johnson Brothers</u>.

The final Minnesota case relied on by the Plaintiff in an attempt to demonstrate that Bickhaus is personally liable on the 2002 guaranty is <u>Jenista v. Burlington Northern Airmotive, Inc.</u>, 388 N.W.2d 770 (Minn. Ct. App. 1986). According to the Plaintiff, the guaranty is clearly designed to hold Bickhaus liable, because "[p]eople who sign documents which are plainly written must expect to be held liable thereon." <u>See</u> Plaintiff's motion for summary judgment, p. 12. However, in <u>Jenista</u>, there was no ambiguity in the guaranty, and Jenista signed only his name, without identifying any corporate capacity or affiliation next to his signature. <u>Jenista</u>, 388 N.W.2d at 771. In addition, the guaranty in <u>Jenista</u> explicitly provided that Jenista "agree[d] to bind [him]self to pay . . . on demand any sum which may become due . . . by the Company whenever the Company shall fail to pay the same." <u>Jenista</u>, 388 N.W.2d at 771. The court explicitly pointed out that Jenista was proven liable on the guaranty *because the plaintiff demonstrated that he signed the agreement only as "George B. Jenista" and not in any representative capacity.* <u>Jenista</u>, 388 N.W.2d at 773. Thus, in <u>Jenista</u>, it was clear from the guaranty that Jenista was bound, because his signature did not indicate any contrary intent.

Here, Bickhaus signed the 2002 guaranty as "Chris Bickhaus, as President, Fastop, Inc." (<u>See</u> Exhibit L attached to the Plaintiff's motion for summary judgment). Bickhaus has stated under oath that he did not intend to give a personal guaranty, but only intended to sign as a representative of Fastop. (<u>See</u> Affidavit of Christopher Bickhaus, <u>Exhibit A</u>, ¶7-10). Further, this was

16

communicated to the Plaintiff at the time of execution of the 2002 guaranty.  (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7).  Further, the Plaintiff acknowledged the ambiguity in letters to the Defendant on June 20 and June 30, 2003, where the nature of Bickhaus' signature on the 2002 guaranty was questioned and requesting that the Defendant execute a new document specifically titled "personal guaranty."  (See Affidavit of Christopher Bickhaus, Exhibit A, ¶10-12, Bickhaus Exhibit 1).  Therefore, the cases relied on by the Plaintiff are inapposite and do not apply.  In addition, at least one Minnesota case has contradicted the Plaintiff's theory by refusing to hold a corporate president personally liable on a promissory note signed in his representative capacity. See Almac, Inc. v. JRH Development, Inc., 391 N.W.2d 919, 924 (Minn. Ct. App. 1986).  Plaintiff presents no Minnesota precedent entitling it to summary judgment.

> ### 3. Under applicable Minnesota law, the Plaintiff's motion for summary judgment must be denied.

According to the Minnesota Supreme Court, a guaranty is construed in the same way as any other contract. American Tobacco Co. v. Chalfen, 108 N.W.2d 702 (Minn. 1961).  As in Illinois, in Minnesota, a contract is ambiguous if it is reasonably susceptible to more than one interpretation. Untiedt v. Grand Laboratories, Inc., 552 N.W.2d 571, 574 (Minn. Ct. App. 1996).  Ambiguous contracts are construed against the drafter. Untiedt, 552 N.W.2d at 574.  Although the construction of a contract is generally a question of law for the court, where there is an ambiguity and the contract's construction depends upon extrinsic evidence (such as evidence of the parties' intent), there is a question of fact for the jury. Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979).

The 2002 guaranty in this case was signed by "Chris Bickhaus, as President, Fastop, Inc." There is nothing in the guaranty agreement itself explicitly providing that Bickhaus agreed to be personally liable for the debts of Fastop.  (See Exhibit L attached to the Plaintiff's motion for

17

summary judgment). The 2002 guaranty merely provides that the "undersigned" is guaranteeing payment, and the "undersigned" in the guaranty is not Chris Bickhaus, the individual ---- the "undersigned" is "Chris Bickhaus as President of Fastop, Inc." (See Exhibit L attached to the Plaintiff's motion for summary judgment). Any language in the guaranty that appears to contradict the manner in which Bickhaus signed the guaranty creates an ambiguity in the guaranty. Thus, it is necessary to consider extrinsic evidence.

Bickhaus has submitted a sworn affidavit to support a finding that he signed the guaranty only in a representative capacity as the president of Fastop, and that he never intended to be personally liable for any of Fastop's debts. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10). In addition, there is evidence that the Plaintiff was aware Bickhaus intended only to sign the guaranty as a representative of Fastop. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7, 9-10). Bickhaus advised Scott Beiswenger, a representative of the Plaintiff, of this fact in more than one telephone conversation. Further, had the Plaintiff not believed that at the very least a question existed as to whether Bickhaus intended to be personally bound by the 2002 guaranty, it would have had no reason to request Bickhaus to sign the second (obviously personal) guaranty in June of 2003. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶10-12, Bickhaus Exhibit 1).

The Plaintiff submits nothing in support of its motion for summary judgment to indicate that Bickhaus intended to be personally liable on the guaranty. The affidavit of Rick Cummings provided by the Plaintiff is worthless to the Plaintiff's theory, because it contains only legal conclusions to the effect that Bickhaus personally guaranteed Fastop's debts. Such legal conclusions are insufficient to support the entry of summary judgment in the Plaintiff's favor. G.D. Searle & Co. v. Chas. Pfizer & Co., 231 F.2d 316, 318 (7th Cir. 1956); Postscript Enterprises v. City of Bridgeton, 905 F.2d 223, 226 (8th Cir. 1990). Even under Minnesota law, the Plaintiff's motion for summary judgment must be denied.

18

## CONCLUSION

For the reasons stated in this response, the Plaintiff's motion for summary judgment should be denied. The Plaintiff has presented no competent precedent or evidence to support its claim that Bickhaus is personally liable for any of Fastop's debts. Rather, Bickhaus's affidavit and the law of both Illinois and Minnesota support a finding that summary judgment in the Plaintiff's favor is not warranted. There is sufficient evidence that Bickhaus did not intend to be personally bound by the guaranty, and such evidence creates a genuine issue of material fact which must be left for the jury to decide. Accordingly, the Defendant requests that this Court enter an order denying the Plaintiff's motion for summary judgment in its entirety.

s/_____David G. Penn_____
David G. Penn Bar No. 00787089
Attorney for Defendant
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street
P. O. Box 1069, Quincy, IL 62305
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail Address: dpenn@srnm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Dawn Ann Morville Johnson, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: Michelle Drake.

s/_____David G. Penn_____
David G. Penn Bar No. 00787089
Attorney for Defendant
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069, Quincy, IL 62305
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail Address: dpenn@srnm.com