E-FILED
Wednesday, 03 November, 2004  04:39:23 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHS, INC., formerly known as CENEX HARVEST STATES COOPERATIVES, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Cause No. 03-3263 |
| CHRISTOPHER BICKHAUS, | ) ) ) | |
| Defendant. | ) | |

## AFFIDAVIT OF CHRISTOPHER BICKHAUS

I, Christopher Bickhaus, being duly sworn upon my oath, state:

1.  My name is Christopher Bickhaus. I am over 18 years of age and have personal knowledge of the facts contained within this affidavit, and, if called, could and would testify competently thereto.

2.  I am the former President of Fastop, Inc. ("Fastop").

3.  Fastop was a corporation that owned several convenience stores with gas stations located in both Illinois and Missouri.

4.  Fastop entered into an agreement to purchase refined oil products from the Plaintiff, CHS, Inc., formerly known as Cenex Harvest States Cooperatives ("CHS").

5.  Fastop also incurred two loan obligations with CHS depicted by promissory notes from Fastop to CHS dated June 14, 2002 and March 26, 2003. I signed these promissory notes as Fastop's President and representative. True copies of these promissory notes are attached to Plaintiff's motion for summary judgment as "Exhibit B" and "Exhibit D," respectively.



EXHIBIT A

6. In September 2003, Fastop declared bankruptcy, filing for Chapter 11 protection. Subsequently, in 2004, the bankruptcy petition was converted to a Chapter 7 filing.

7. Prior to Fastop's bankruptcy, in 2002, I signed the guaranty at issue in this case as the President of Fastop ("the 2002 guaranty") in the presence Stuart Wilson, a representative of CHS. Prior to signing the 2002 guaranty, I told Wilson I was not signing the 2002 guaranty personally. Wilson expressed concern that Fastop would not receive fuel from CHS if I did not sign the 2002 guaranty in my personal, individual capacity. I reiterated that I would only sign in my capacity as an officer, specifically President, of Fastop, Inc., as indicated by the language "as President of Fastop, Inc." after my signature. I signed the 2002 guaranty in the same manner as I signed the promissory notes dated June 14, 2002 and March 26, 2003. A true copy of the 2002 guaranty is attached as to the Plaintiff's motion for summary judgment as "Exhibit L."

8. When I signed the 2002 guaranty, it was never my intent to sign in my individual or personal capacity, and I never intended to incur any personal liability for any debt incurred by Fastop. Rather, it was my intent only to sign that guaranty as a representative of Fastop. Had I intended to be personally liable to CHS for any debt incurred by Fastop, I would have signed only my name without the notation "as President, Fastop, Inc."

9. On more than one occasion in July and August 2003, I had a telephone conversation with Scott Beiswenger, a representative of CHS, where I informed Scott Beiswenger that I signed the 2002 guaranty only as Fastop's representative, not in my personal capacity. Beiswenger directly asked me if I signed the 2002 guaranty in my personal capacity. I reiterated that I did not intend to be personally liable, did not sign the 2002 guaranty in my personal capacity, and specifically

2

intended and did execute the 2002 guaranty in my capacity as an officer of Fastop. My attorney, Michael A. Bickhaus, was also present during at least one of these conversations.

10. It is my understanding that CHS was aware of my position that I did not sign the 2002 guaranty in my personal capacity. Copies of these letters are attached to the Plaintiff's motion for summary judgment as "Exhibit F" and "Exhibit M." CHS disputed my position, describing the addition of the words "as President of Fastop, Inc." after my signature on the 2002 guaranty as "an inadvertent error" in letters I received from a representative of CHS in June 2003. Copies of these letters are attached to the Plaintiff's motion for summary judgment as "Exhibit F" and "Exhibit M." As set forth above, including the language "as President of Fastop, Inc." after my signature was neither inadvertent, nor in error. Instead, it was included as evidence of my intent to sign the 2002 guaranty only in my capacity as an officer of Fastop, and not in my personal capacity.

11. In a letter dated June 20, 2003, CHS asked me to sign another guaranty, this time as a personal guaranty of Fastop's debt. I never signed the new guaranty requested by CHS. A copy of this letter is attached to the Plaintiff's motion for summary judgment as "Exhibit E."

12. The new guaranty that CHS asked me to sign on June 20, 2003 is different from the guaranty I signed as President of Fastop in 2002. A copy of the form I was asked to sign is attached as <u>Bickhaus Exhibit 1</u>. The form I was asked to sign on June 20, 2003 explicitly provides that I would have signed in my individual capacity, which I did not want to do. See <u>Bickhaus Exhibit 1.</u>

13. The guaranty I signed in 2002 as President of Fastop had no preprinted notation that I was signing in an individual capacity. <u>See</u> "Exhibit L" attached to the Plaintiff's motion for summary judgment.

FURTHER AFFIANT SAYETH NAUGHT.

3

_____
Christopher Bickhaus

STATE OF ILLINOIS      )
                       )  ss.
COUNTY OF ADAMS        )

Subscribed and sworn to before me this  3  day of November, 2004.

OFFICIAL SEAL
SARAH WELLMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-20-2005

_____
Notary Public

My commission expires:  6-20-05

## PERSONAL GUARANTEE

This PERSONAL GUARANTEE is made on March 26, 2003, by Chris Bickhaus, whose personal residence is 107 S. 20th, Quincy, Illinois 62301 (the "Guarantor"), to Cenex Harvest States Cooperatives ("CHS"), to induce CHS to accept an Installment Promissory Note with an effective date of March 26, 2003, in the amount of One Million, Three Hundred Sixty Thousand, Six Hundred Ninety Seven Dollars and Eighty Three Cents ($1,360,697.83), executed by Fastop, Inc. as the Debtor (the "Note").

Guarantor hereby acknowledges that a copy of the Note is attached hereto and incorporated herein to this Personal Guarantee. Further, Guarantor hereby acknowledges that he has read such Note and understands all of the obligations of Fastop, Inc. under such Note.

Guarantor hereby acknowledges and agrees that he is familiar with the financial condition and affairs of Fastop, Inc. Further, Guarantor hereby acknowledges and agrees that he has not relied on any information provided by CHS as a basis for determining whether he will execute this Personal Guarantee.

Guarantor hereby acknowledges and agrees that this Personal Guarantee shall be effective as to Guarantor upon delivery to CHS without any further act, conditions, or acceptance by CHS. Guarantor, without affecting his liability hereunder, in any respect, hereby waives notice of acceptance by CHS of the terms of this Personal Guarantee.

Guarantor hereby guarantees to CHS that, upon any demand from Cenex, Guarantor shall promptly pay to CHS the full amount of all amounts that are due to CHS by Fastop, Inc. under the Note, in accordance with terms of the Note (the "Demand Payment"). Guarantor, without affecting his liability hereunder, hereby waives all defenses he and/or Fastop, Inc. may have to make prompt payment to CHS of the full amount of such Demand Payment by Guarantor, including, but not limited, to any claim of set-off and/or counterclaim of Fastop, Inc., and/or any claim for loss of contribution from any co-guarantor, except for a defense of full payment and discharge of all indebtedness due to CHS by Fastop, Inc., and performance of all obligations of Fastop, Inc., under the Note.

Guarantor hereby agrees that, if CHS is required to return any payment received by CHS from Fastop, Inc. and/or Guarantor for any reason (including, but not limited to the required return of a payment due to the bankruptcy of Fastop, Inc. and/or Guarantor), which payment has been applied by CHS to the obligations of Fastop, Inc. under the Note, and/or the obligations of Guarantor under this Personal Guarantee, such payment shall be treated, for all purposes, as never having been made, and Guarantor shall be obligated to promptly pay to CHS the amount of the payment required to be returned by CHS.

Guarantor hereby acknowledges and agrees that this Personal Guarantee is a **guaranty of payment**, and not a guaranty of collection. Accordingly, Guarantor hereby agrees that: the obligation of Guarantor to pay to CHS all amounts that are due to CHS by Fastop, Inc. under the Note is a primary and unconditional obligation; the obligation of Guarantor to pay to CHS all amounts that are due to CHS by Fastop, Inc. under the Note shall be enforceable against Guarantor before or after CHS proceeding against Fastop, Inc., or against any security held by CHS; and the obligation of Guarantor to pay to CHS all amounts that are due to CHS by Fastop, Inc. under the Note shall be effective regardless of the solvency or insolvency of Fastop, Inc.

1

**EXHIBIT**
BICKHAUS
EXHIBIT 1

Guarantor agrees that no act or thing need occur to establish the liability of Guarantor, that this is a continuing guaranty, and no act or thing, except full payment and discharge of all indebtedness due to CHS by Fastop, Inc. under the Note, shall in any way exonerate Guarantor, or modify, reduce, limit or release the liability of Guarantor hereunder.

Guarantor hereby agrees that, in the event of any failure by Guarantor to make full payment of a Demand Payment within five (5) days from the date of a demand from Cenex to make such a Demand Payment, then CHS shall have the right to exercise any remedy it may have under the terms of this Personal Guarantee and/or applicable law, including, but not limited to, initiation of legal proceedings against such Guarantor. Guarantor hereby agrees that, in the event of a default by Guarantor, Guarantor shall reimburse CHS for all costs and fees that CHS incurs in collecting the unpaid Demand Payment, including, but not limited to, all attorneys' fees and costs and expenses of litigation and court costs.

Guarantor, without affecting his liability hereunder, in any respect, hereby consents to, and waives, notice of any defaults or disputes CHS has with Fastop, Inc., notice of any settlement of defaults or disputes CHS has with Fastop, Inc, and notice of any variation, modification, and/or waiver of any term or condition in the Note, including, but not limited to, any extension of the time for payment of all or any portion of the amount owing under the Note.

Guarantor hereby agrees that CHS may settle, release, renew, extend, alter or otherwise dispose of, or deal with, any or all of Fastop, Inc.'s obligations under the Note, or any collateral securing the obligations of Fastop, Inc. under the Note, without notifying or obtaining the consent of Guarantor, and further agrees that any such act by CHS shall not release, limit or affect the liability of Guarantor under the terms of this Personal Guarantee, in any respect.

Guarantor hereby agrees that CHS shall have the right, at its sole option and discretion, to assign this Personal Guarantee upon notice to Guarantor; and Guarantor hereby agrees (subject to and conditional upon any provisions of applicable law to the contrary) that if there is an assignment or transfer of this Personal Guarantee, such assignee or transferee shall succeed to all the rights and remedies of CHS under this Personal Guarantee.

Guarantor hereby agrees that CHS' rights as set forth herein are cumulative, and none of CHS' rights shall be exhausted by CHS' exercise of any of its rights hereunder, until CHS has received full payment of all indebtedness due to CHS by Fastop, Inc. under the Note.

Guarantor hereby agrees that the failure of CHS to exercise any right, power or option given it hereunder, or to insist on strict compliance with all the terms and conditions herein, shall not in any event constitute a waiver of any term, condition or right herein, unless and until CHS shall have confirmed any such action or inaction to be a waiver in writing. Further, Guarantor hereby agrees that any such waiver shall not act as a waiver of any other term, condition, or right herein, or a waiver of the same term, condition, or right herein on any other occasion not specifically waived in writing by CHS.

Guarantor hereby agrees that, in the event that any provision of this Personal Guarantee is determined by a court of competent jurisdiction to be invalid, illegal, or unenforceable under applicable law, such provision shall be ineffective only to the extent that such provision is explicitly deemed invalid, illegal, or unenforceable, and all of the remaining provisions of this Personal Guarantee shall be valid and enforced to the fullest extent permitted by law.

Guarantor hereby agrees this Personal Guarantee shall be binding upon Guarantor, and the successors and assigns of Guarantor, and shall inure to the benefit of CHS, and its successors and assigns.

Guarantor hereby agrees this Personal Guarantee, and all rights, obligations, and duties arising hereunder, and all disputes which may arise hereunder, shall be construed in accordance with, and governed by, laws of the state of Minnesota, without giving effect to the conflict of laws provisions thereof.

**IN WITNESS WHEREOF,** Guarantor has executed this Personal Guarantee on the date first above written (March 26, 2003).

_____
Chris Bickhaus
107 S. 20th
Quincy, IL 62301