E-FILED
Friday, 03 December, 2004  05:23:26 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CHS INC., formerly known as CENEX HARVEST STATES COOPERATIVES, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Cause No.: 03-3263 ) |
| CHRISTOPHER BICKHAUS, | ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Plaintiff CHS Inc., formerly known as Cenex Harvest States Cooperatives ("CHS"), by its undersigned attorneys, and, pursuant to Federal Rule of Civil Procedure 56, submits its Reply Memorandum in Support of its Motion for Summary Judgment.

**FACTS**

**I.    CHS's Amended Statement of Undisputed Material Facts**

CHS, by and through its Motion for Leave to Amend Plaintiff's Statement of Undisputed Material Facts and Declaration of Rick Cummings, filed contemporaneously herewith, has requested leave to amend its original Statement of Undisputed Material Facts and file an Amended Declaration of Rick Cummings. The Amended Statement of Undisputed Material Facts are as follows:

12.    On or about October 30, 2002, for good and valuable consideration, Christopher Bickhaus, either in his individual capacity or as a representative of Fastop, executed and delivered to CHS a Guaranty of Credit (the "Guaranty") for the benefit of CHS to induce CHS to grant credit or assume a credit risk in respect to the sales of goods made by CHS to Fastop, or in

758314

respect of any type of transaction by which CHS may become the creditor of Fastop. Typed above the signature line is the name "Chris E. Bickhaus," with no reference to Fastop. However, the signature on the Guaranty is as follows: "Chris Bickhaus, as President, Fastop Inc." <u>See</u> Amended Declaration of Rick Cummings ("Amd. Cummings Decl."), attached hereto as **Exhibit 1**, and incorporated by reference, ¶ 15 and Exh. L, Guaranty of Credit.

13. In the Guaranty, the undersigned agreed to pay to CHS, when due, or upon demand thereafter, with interest, and, without deduction for any claim of set-off, or counterclaim of the Customer (defined in the Guaranty as Fastop), or loss of contribution from any co-guarantor, the full amount of all obligations or indebtedness due CHS from the Customer, together with all expenses of collection and reasonable counsel fees incurred by CHS by reason of a default of the Customer. <u>See</u> Amd. Cummings Decl., Exh. L, Guaranty of Credit, 1st Paragraph.

14. In the Guaranty, the undersigned agreed that no act or thing need occur to establish the liability of the undersigned, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the undersigned, or modify, reduce, limit or release the liability of the undersigned. <u>See</u> Amd. Cummings Decl., Exh. L, Guaranty of Credit, ¶ 1

15. In the Guaranty, the undersigned agreed that the Guaranty is a continuing guaranty, which shall be revocable only as to transactions entered into by CHS, subsequent to the receipt by the Credit Manager of CHS, of a notice of termination, which shall be sent Certified or Registered mail via U.S. Postal Service. <u>See</u> Amd. Cummings Decl., Exh. L, Guaranty of Credit, ¶ 2.

16. In the Guaranty, the undersigned agreed that the obligation of the undersigned is a primary and unconditional obligation, and covers all existing and future indebtedness of the Customer to CHS. See Amd. Cummings Decl., Exh. L, Guaranty of Credit, ¶ 4.

17. In the Guaranty, the undersigned agreed that the obligation under the Guaranty shall be enforceable before or after CHS proceeding against the Customer, or against any security held by CHS and shall be effective regardless of the solvency or the insolvency of the Customer. See Amd. Cummings Decl., Exh. L, Guaranty of Credit, ¶ 4.

18. CHS has not received any written notice of termination of the Guaranty from any person, including but not limited to, Christopher Bickhaus, either in his individual capacity or as a representative of Fastop. See Amd. Cummings Decl., ¶ 16.

19. The undersigned, as the guarantor of the payment of the unpaid amount of $31,120.89 under the June 14, 2002 Note, has failed and refused to pay the amount of $31,120.89 due and owing pursuant to the terms of the Guaranty. See Amd. Cummings Decl., ¶ 17.

20. The undersigned, as the guarantor of the payment of the unpaid amount of $1,243,553.13 under the March 26, 2003 Note, has failed and refused to pay the amount of $1,243,553.13 due and owing pursuant to the terms of the Guaranty. See Amd. Cummings Decl., ¶ 18.

21. The undersigned, as the guarantor of the payment of the overpaid amount of $152,987.82 in First Year Incentive Money, has failed to pay the overpaid amount of $152,987.82 due and owing pursuant to the terms of the Guaranty. See Amd. Cummings Decl., ¶ 19.

22.     CHS has incurred, and will continue to incur, attorneys' fees and other legal expenses, in connection with its efforts to collect the amounts guaranteed by the undersigned in the Guaranty from Christopher Bickhaus.  <u>See</u> Amd. Cummings Decl., ¶ 20.

CHS has also sought leave to file an Amended Declaration of Rick Cummings, which contains the same amendments as those listed above, in paragraphs 15-20.

## II.     CHS's Reply to Defendant's Response to Statement of Undisputed Material Facts

Defendant disputes Plaintiff's Statements Nos. 4, 7, 9, 10, and 22 because, as Defendant contends, "the Plaintiff produces no documentation to demonstrate" each of these statements – for example, "that all 'just credits' were given to Fastop." <u>See</u> Defendants' Response, p. 4-5.

First, such a dispute as to CHS's Statements Nos. 4, 7, 9, 10 came as an absolute surprise to CHS, as Defendant has never specifically disputed the outstanding amounts Fastop owes to CHS.  CHS specifically asked Defendant, through its First Set of Interrogatories, to provide factual support for his denial of the allegations in the First Amended Complaint regarding the outstanding amounts owed to CHS by Fastop.  Defendant simply responded by saying he does not have sufficient information to admit these allegations, and therefore, they were denied. Defendant never contended there was an actual dispute as to the amounts owed to CHS by Fastop, nor did Defendant respond with any evidentiary support of an actual dispute as to those amounts.  <u>See</u> Exhibit 5.  Defendant also claims that CHS's Statements Nos. 5, 8 and 11 are irrelevant because CHS has not provided any orders showing that the Proofs of Claim filed in Fastop's bankruptcy are valid.  Once again, Fastop never objected to those Proofs of Claim, and therefore, no order was necessary to show their validity.

Furthermore, Rule 56 of the Federal Rules of Civil Procedure requires an opposing party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. Proc.

56(e). Thus, Defendant cannot merely dispute such statements simply by asserting that CHS has not provided sufficient documentation to support the statements. Defendant is required to come forth with specific facts which would show that such statements are in dispute. As President of Fastop, Bickhaus certainly has access to all the information regarding credits applied by CHS against amounts owing by Fastop, and, if such a dispute regarding CHS's actions actually exists, as Defendant contends, then Defendant is required to come forth with those specific facts. Defendant has failed to meet this burden.

Moreover, Defendant's contention that CHS has not provided sufficient documentation to support its statements is simply incorrect. CHS has provided documentation supporting its statement of facts by and through the Declaration of Rick Cummings and the Exhibits attached thereto. Therefore, Defendant's response to CHS's Statements Nos. 4, 7, 9, 10, and 22 should be disregarded, and such statements should be deemed undisputed.

CHS has further replied to Defendant's response to Plaintiff's Statement Nos. 12-22, above, in Section I of this Reply, and in its Motion for Leave to Amend Statement of Undisputed Material Facts and Declaration of Rick Cummings.

### III. CHS's Response to Additional Material Facts Claimed to Defeat the Motion for Summary Judgment

1.    In 2002, the Defendant, Christopher Bickhaus, signed the 2002 guaranty as President of Fastop. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7, 8; Exhibit L attached to the Plaintiff's motion for summary judgment).

**Response:**    CHS admits that Christopher Bickhaus signed the Guaranty as follows: "Chris Bickhaus as President Fastop, Inc." See Amd. Cummings Decl., Exh. L. CHS further states that, to the extent Paragraph 1 contains a legal conclusion and is not a statement of fact, it should be stricken. As more fully outlined below, the question of whether Christopher Bickhaus

signed the Guaranty in his individual capacity or as a representative of Fastop is a legal question to be determined by the Court.

2.     The Defendant, Christopher Bickhaus, signed the 2002 guaranty only in a representative capacity, not in an individual capacity, by signing the guaranty as President of Fastop. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7, 8).

**Response:**     Denied. Paragraph 2 contains a legal conclusion, not a statement of fact, and should therefore be stricken. As more fully outlined below, the question of whether Christopher Bickhaus signed the Guaranty in his individual capacity or as a representative of Fastop is a legal question to be determined by the Court.

3.     The Defendant, Christopher Bickhaus, intended to and signed the 2002 guaranty only as a representative of Fastop, not in any individual capacity, and not to personally guaranty any debt incurred by Fastop. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10).

**Response:**     CHS admits that Bickhaus has said in his Affidavit that he intended to and signed the 2002 guaranty only as a representative of Fastop, not in any individual capacity. However, CHS has no knowledge of Bickhaus' intent when he signed the Guaranty. Further, because the Guaranty is clear and unambiguous on its face, Bickhaus' intent when he signed such Guaranty is irrelevant and immaterial. Such statement, whether or not it is proven by Defendant, will have no effect on the outcome of the issues addressed in CHS's Motion for Summary Judgment. Therefore, the statement should be stricken.

4.     The Defendant made known to the Plaintiff his intent that he was signing the 2002 guaranty only in a representative capacity, not as an individual. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7-10).

**Response:**     CHS denies the alleged statement of facts contained in Paragraph 4. As to Paragraph 7 of the Affidavit of Christopher Bickhaus (the "Bickhaus Affidavit"), see CHS's Response to Paragraph 5 of Defendant's additional facts, below. As to Paragraph 8 of the Bickhaus Affidavit, see CHS's Response to Paragraph 3 of Defendant's additional facts, above.

As to Paragraph 9 of the Bickhaus Affidavit, CHS states that the alleged statement, whether or not it is proven by Defendant, will have no effect on the outcome of the issues addressed in CHS's Motion for Summary Judgment because the events outlined in the alleged statement occurred, if at all, after the Guaranty was signed. Therefore, the statement should be stricken. As to Paragraph 10 of the Bickhaus Affidavit, CHS states that Defendant provides no basis in fact for his alleged "understanding," and, therefore, CHS cannot possibly respond to the alleged statement. Notwithstanding, Christopher Bickhaus never told Doug Fischbach (CHS Credit Manager), Stuart Wilson (CHS Direct Brand Specialist) or Dan Pomranke (CHS Sales Manager), prior to signing the Guaranty, that he was not signing the Guaranty in his personal capacity. See Declaration of Doug Fischbach ("Fischbach Decl.") ¶ 10, attached hereto as **Exhibit 2** and incorporated by reference; Declaration of Stuart Wilson ("Wilson Decl."), ¶ 9, attached hereto as **Exhibit 3** and incorporated by reference; Declaration of Dan Pomranke ("Pomranke Decl."), ¶ 7, attached hereto as **Exhibit 4** and incorporated by reference. Furthermore, prior to the execution of the Guaranty, Mr. Fischbach, Mr. Wilson and Mr. Pomranke were never aware of Christopher Bickhaus' intention to sign the Guaranty as a representative of Fastop. Id.

CHS further states that Mr. Fischbach approved a credit line for Fastop in early June 2002, without the security of a guaranty from any party, including but not limited to, Christopher Bickhaus. See Fischbach Decl., ¶ 5. On or about October 10, 2002, Fastop began having problems with electronic funds transfer ("EFT") drafts being returned as a result of "non-sufficient funds." See Fischbach Decl., ¶ 6; Wilson Decl., ¶ 6; Pomranke Decl., ¶ 6. On or about October 29, 2002, Mr. Fischbach spoke to Bickhaus about the payment problems with Fastop. See Fischbach Decl., ¶ 7. During this conversation, Mr. Fischbach clearly stated to Bickhaus that CHS now required a personal guaranty from Bickhaus to support CHS's sales to Fastop. Id.

Bickhaus never objected to signing a personal guaranty during this conversation. Id. Following this conversation with Bickhaus, Mr. Fischbach emailed the Guaranty to Stuart Wilson. Id. at ¶ 8; Wilson Decl. ¶ 7. The Guaranty has "Chris E. Bickhaus" typed above the signature line. Id. Mr. Wilson faxed the Guaranty to Mr. Bickhaus on October 29, 2002, without talking to Mr. Bickhaus about the Guaranty. See Wilson Decl. ¶¶ 7, 8. On or about October 30, 2002, Bickhaus faxed the executed Guaranty to Mr. Fischbach. See Fischbach Decl., ¶ 9.

     5.    Bickhaus signed the guaranty at issue in this case as the President of Fastop ('the 2002 guaranty") in the presence of Stuart Wilson, a representative of CHS. Prior to signing the 2002 guaranty, Bickhaus told Wilson he was not signing the 2002 guaranty personally. Wilson expressed concern that Fastop would not receive fuel from CHS if I did not sign the 2002 guaranty in my personal, individual capacity. Bickhaus reiterated that he would only sign in his capacity as an officer, specifically President, of Fastop, Inc., as indicated by the language "as President of Fastop, Inc." after his signature. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶7; Exhibit L attached to the Plaintiff's motion for summary judgment).

     **Response:**    CHS denies the alleged statement of facts contained in Paragraph 5. See CHS's Response to Paragraph 4, above. Interestingly, this is the first time Defendant mentions this alleged conversation with Stuart Wilson. CHS specifically asked Bickhaus in its First Set of Interrogatories to "[s]tate whether you are aware of any communication made by CHS (including its employees, agents, or servants) regarding the factual allegations contained in the First Amended Complaint…" Bickhaus never mentioned his alleged conversation with Stuart Wilson in his answers to this specific Interrogatory or to CHS's Interrogatories as a whole. See Defendant's Answers to Interrogatories, attached hereto as **Exhibit 5** and incorporated herewith.

     CHS recognizes that there appears to be a factual dispute as to whether Bickhaus signed the Guaranty in Mr. Wilson's presence and whether Bickhaus had this conversation with Mr. Wilson. However, it is clear from Mr. Wilson's Declaration and the expense report attached thereto as Exhibit A, that there is no possible way Bickhaus had this face-to-face conversation with Mr. Wilson on October 29, 2002, or any time during the week of October 28, 2002, when

he signed the Guaranty, because Mr. Wilson was not in Quincy, Illinois, where Fastop is located, during that period. See Wilson Decl., ¶ 8. Defendant's Affidavit is merely an attempt to create an issue of material fact when there is none.

6.  The Plaintiff, in a letter to Christopher Bickhaus dated June 20, 2003, asked Bickhaus to sign another guaranty, this time explicitly referred to it as a "personal guaranty" of Fastop's debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶11, Bickhaus Exhibit 1).

**Response:** CHS admits the alleged statement of facts contained in Paragraph 6. The Personal Guarantee referenced in Paragraph 6 was specifically prepared to apply only to the March 26, 2003 Note, rather than an on-going sales relationship with Fastop. It is more limited and more specific than the form Guaranty signed by Christopher Bickhaus, either in his individual capacity or as a representative of Fastop. Notwithstanding, the alleged statement of facts stated by Defendant, as well as the additional facts provided by CHS in its response, are immaterial and irrelevant to the issues addressed in CHS's Motion for Partial Summary Judgment because they have no bearing on the issues regarding the Guaranty. Accordingly such statements should be disregarded.

7.  Bickhaus never signed the proposed personal guaranty requested by the Plaintiff on June 20, 2003. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶11).

**Response:** CHS admits the alleged statement of facts contained in Paragraph 7. However, similar to CHS's response to Paragraph 6, these alleged facts are immaterial and irrelevant to the issues addressed in CHS's Motion for Partial Summary Judgment because they have no bearing on the issues regarding the Guaranty. Accordingly such statements should be disregarded.

8.  The Plaintiff provided a form for the personal guaranty requested on June 20, 2003, which differs from the 2002 guaranty by explicitly noting above the signature line that Bickhaus, had he signed, would have signed the new guaranty in his individual capacity to personally guaranty the debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶11-13, Bickhaus Exhibit 1).

**Response:**     CHS denies the alleged statement of facts in Paragraph 8 to the extent they are inconsistent with the language contained in the Personal Guarantee attached to Defendant's Response as "Bickhaus Exhibit 1." See CHS's Response to Paragraph 6, above. Notwithstanding, such additional facts are immaterial and irrelevant to the issues addressed in CHS's Motion for Partial Summary Judgment because they have no bearing on the issues regarding the Guaranty. Accordingly such statements should be disregarded.

9. The 2002 guaranty, signed by Bickhaus as President of Fastop, had no preprinted notation that Bickhaus was signing in an individual capacity or that he would be personally guaranteeing Fastop's debt. (See Affidavit of Christopher Bickhaus, Exhibit A, ¶13, Bickhaus Exhibit 1).

**Response:**     CHS denies the alleged statement of facts contained in Paragraph 9. The Guaranty presented to Christopher Bickhaus and signed by Christopher Bickhaus had "Chris E. Bickhaus" typed above the signature line. There is no indication in the Guaranty that anyone other than "Chris E. Bickhaus" was to be the signatory. Notwithstanding how he may have signed it, at no point in time did Christopher Bickhaus modify that indication in any way. See Amd. Cummings Decl. Exh. L, Guaranty of Credit.

10. There is no language in the body of the 2002 guaranty stating that Bickhaus is assuming any personal liability, and Bickhaus's name never appears in the body of the document. (See Exhibit L attached to the Plaintiff's motion for summary judgment).

**Response:**     CHS denies the alleged statement of facts contained in Paragraph 10. See CHS's Response to Paragraph 9. Furthermore, it is clear from the Guaranty that Fastop was the "Customer" whose debts were being secured by the "undersigned" – Chris E. Bickhaus (as typed on the Guaranty prior to being presented to Christopher Bickhaus). See Amd. Cummings Decl. Exh. L, Guaranty of Credit

11. The 2002 guaranty refers liability only to "the undersigned." (See Exhibit L attached to the Plaintiff's motion for summary judgment).

**Response:** CHS admits the alleged statement of facts contained in Paragraph 11, but see CHS's Response to Paragraph 10.

12.   The 2002 guaranty never identifies "the undersigned" as Christopher Bickhaus, the individual. (See Exhibit L attached to the Plaintiff's motion for summary judgment).

**Response:** CHS denies the alleged statement of facts contained in Paragraph 12. See CHS's Response to Paragraph 10.

13.   The "undersigned" on the 2002 guaranty is "Chris Bickhaus, as President, Fastop, Inc." (See Exhibit L attached to the Plaintiff's motion for summary judgment).

**Response:** CHS denies the alleged statement of facts contained in Paragraph 13. See CHS's Response to Paragraph 10.

## ARGUMENT

### A.   Illinois law does not control the outcome of this case.

Bickhaus summarily states that Illinois law, rather than Minnesota law, applies to the current case because applying Minnesota law would violate Illinois policy and law and also because the contract is ambiguous and therefore not presumptively valid. Neither contention is valid and, therefore, the Court should apply Minnesota law to the current dispute.

"Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." Thomas v. Guardsmark, Inc., 381 F.3d 701, 705 (7th Cir. 2004). Bickhaus argues that the contract is presumptively invalid because it is ambiguous. See Response, p. 9. However, Bickhaus cites no cases that support the proposition that all contracts which are ambiguous are presumptively invalid. In fact, there are no such cases. Under the law, even if the Guaranty contains an ambiguity, which CHS maintains it does not, the Guaranty is nonetheless valid – as is the case with most contracts which contain

an ambiguity. Indeed, no one is disputing that the Guaranty exists, or that it was signed by Christopher Bickhaus, either in his individual capacity or as a representative of Fastop. See Thomas, 381 F.3d at 705. Further, neither party argues that the Court should find that the Guaranty is invalid. Because the Guaranty is valid and enforceable, its choice-of-law provisions apply, and Minnesota law controls the current dispute, as stated in the Guaranty. See Amd. Cummings Decl., Exh. L ¶ 8.

Furthermore, giving effect to the choice-of-law provision clearly stated in the Guaranty will not violate any fundamental public policy in Illinois. Illinois courts invalidate choice of law provisions on the basis of public policy only sparingly. Scentura Creations, Inc. v. Long, 325 Ill.App.3d. 62, 756 N.E.2d 451, 457 (Ill. App. 2d Dist. 2001) (quoting McAllister v. Smith, 17 Ill. 328, 334 (Ill. 1856)). Bickhaus erroneously cites Wottowa Ins. Agency, Inc. v. Bock, 472 N.E.2d 411, 413 (Ill. 1984), for the proposition that applying Minnesota law will "violate the long-standing policy and law in Illinois that signing a contract as a representative of a corporation binds only the corporation, not the individual." See Response, p. 9. Wottowa does not establish such a material, fundamental policy that would mandate adherence regardless of the facts and circumstances of each case. In fact, the holding in Wottowa mentions nothing about Illinois public policy, and clearly states that "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then *absent evidence of contrary intent in the document*, the officer is not personally bound." Id. (emphasis added). Defendant cites no case for the proposition that the "long-standing policy and law in Illinois" is that "signing a contract as a representative of a corporation binds only the corporation, not the individual," as Defendant argues. In fact, the very case Defendant cites contemplates a different result when there is evidence to the contrary in the document.

Defendant seems to argue that applying a choice-of-law provision that simply results in a different outcome categorically violates public policy. This is obviously not the case, or parties would never include choice-of-law provisions in their agreements. Furthermore, CHS does not agree with Defendant's contention that applying Minnesota law verses Illinois law would result in different holdings under the facts and circumstances of this case. Accordingly, Bickhaus' argument on this point is meritless. Applying Minnesota law, which Christopher Bickhaus, either in his individual capacity or as a representative of Fastop, agreed would apply by signing the Guaranty, will not violate any material, fundamental policies in Illinois.

**B.     Even under Illinois law, Bickhaus is personally liable for Fastop's debt under the Guaranty, and therefore CHS is entitled to summary judgment.**

Even if the Court determines that the Illinois cases cited by Bickhaus are relevant to the dispute at hand, these cases are distinguishable from the current case. Indeed, these cases do not change the conclusion that Bickhaus is personally liable for Fastop's debt under the Guaranty.

Defendant has cited Sullivan v. Cox 78 F.3d 322, 326 (7th Cir. 1996), to support his argument that because Bickhaus signed the Guaranty "Chris Bickhaus as President, Fastop Inc." he has unequivocally signed the Guaranty as a representative of Fastop. See Response, p. 12. The Sullivan case does not necessarily require such a holding. The Court in Sullivan stated "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then *absent evidence of contrary intent in the document*, the officer is not personally bound." Sullivan, 78 F.3d at 326 (emphasis added). The Sullivan case is distinguishable from the present case because, in Sullivan, there was no evidence in the document contrary to the defendant's assertion that he signed the document as a representative of the corporation. Id.

However, in the present case, there clearly is evidence in the Guaranty contrary to Defendant's argument that he signed the Guaranty as a representative of Fastop: (1) the name

"Chris E. Bickhaus" (with no reference to his corporate capacity) is typed above the signature line on the Guaranty and Mr. Bickhaus did not modify that indication in any way; and (2) the entire Guaranty contemplates two separate and distinct parties, *i.e.* the Customer (Fastop) and the undersigned (Chris E. Bickhaus), as clearly stated in Paragraph 5 of the Guaranty, which specifically provides "[a]ll liabilities of the Customer*, and* of the *undersigned*, shall mature immediately upon insolvency of the Customer, the commission of an act of bankruptcy by the Customer …" (emphasis added). Accordingly, Sullivan does not mandate this Court to conclude that Bickhaus signed the Guaranty as a representative of Fastop.

Despite Bickhaus' argument, Addison State Bank v. Nat'l Maintenance Mgmt., 174 Ill.App.3d 857, 529 N.E.2d 30 (Ill. App. 2d Dist. 1988), does not obligate the Court to find an issue of material fact in the Guaranty. The court in Addison stated that the guaranty's meaning was a question of fact and, therefore, did not determine whether the signatories who signed their names followed by "Pres." were personally liable. Id. at 32-33. Other more recent Illinois cases, however, state that the meaning of a guaranty is a matter of law to be determined by the court. See e.g. T.CT. Bldg. Partnership v. Tandy Corp, 751 N.E.2d 135, 140 (Ill. Ct. App. 2001); Cohen v. Cont'l. Illinois Nat. Bank & Trust Co., 618 N.E.2d 1060, 1063 (Ill. Ct. Appt. 1993).

There is nothing in the Illinois cases cited by Bickhaus, which CHS maintains do not apply, that would require this Court to find that Bickhaus is not personally obligated under the Guaranty. Indeed, a holding that Bickhaus signed the Guaranty as a representative of Fastop fails to give effect to the language and meaning of the document. Accordingly, the Court should grant summary judgment in favor of CHS, even if the Court holds that Illinois law applies.

**C.    Minnesota law entitles CHS to summary judgment.**

Bickhaus argues that CHS's reliance on Charmoll Fashions, Inc. v. Otto, 248 N.W.2d 717 (Minn. 1976), is misplaced because relevant signatures were not followed by a corporate title or entity. Although Bickhaus' distinction is accurate, Charmoll is nevertheless instructive since the language of the guaranty is very similar to the language of the Guaranty signed by Bickhaus. Charmoll examined the guaranty's language to determine whether the signatories were comakers of the note or guarantors. Id. at 719. The court found that the specific language of the guaranty alerted the signatories that they were individually guaranteeing the debt. Id. at 218-19. Like Charmoll, the language of the Guaranty alerted Bickhaus that he was securing the Customer, Fastop's, debts and therefore, was signing in his personal capacity.

Bickhaus correctly notes the brevity of Johnson Bros. Wholesale Liquor Co. v. Otto's Liquor, Inc., 194 N.W.2d 592, 592 (Minn. 1972). Indeed, the Minnesota Supreme Court needed only three paragraphs to conclude that a corporation could not guarantee its own debt. Thus, the defendant's signature on the guaranty for the corporation's debt was necessarily in her individual capacity. Id. Likewise, Fastop cannot guarantee its own debt and, therefore, Bickhaus necessarily signed the Guaranty in his personal capacity. Despite Bickhaus' critique that there are insufficient facts in Johnson Bros. for it to be instructive, no additional facts are needed to demonstrate that, as a matter of law, a corporation cannot guarantee its own debt.

Bickhaus claims that in Almac, Inc. v. JRH Development, Inc., 391 N.W.2d 919 (Minn. Ct. App. 1986), the Minnesota Court of Appeals refused to hold a corporate president personally liable on a promissory note signed in his representative capacity. Almac neither stands for this proposition nor is relevant to the current case. Almac considered first whether plaintiff could pierce the corporate veil to hold defendant, the president of the corporation, liable for a

promissory note he signed on behalf of the corporation. Id. at 922-23. Next, Almac determined whether the defendant was personally liable for a debt entered by the corporation under a theory of promoter liability. Id. at 924-25. Neither situation is relevant to the case at hand. Accordingly, under Minnesota law, the Court should enter summary judgment in favor of CHS.

**D.     Under Minnesota law, the Guaranty unambiguously imposes personal liability on Bickhaus.**

Under Minnesota law, "a guaranty is construed the same as any other contract, the intent of the parties being derived from the commonly accepted meaning of the words and clauses used, taken as a whole." American Tobacco Co. v. Chalfen, 108 N.W.2d 702, 704 (Minn. 1961). The construction and effect of a contract are questions of law for the court. Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979). A contract is ambiguous only if its language is *reasonably* susceptible to multiple interpretations, and whether an ambiguity exists is a question of law. Untiedt v. Grand Laboratories, Inc., 552 N.W.2d 571, 574 (Minn. Ct. App. 1996). A court will *not* look outside the language of a contract to determine whether it is ambiguous. Prairie Island Indian Cmty. v. Minnesota Dept. of Pub. Safety, 658 N.W.2d 876, 889 (Minn. Ct. App. 2003). "If the contractual provision is not ambiguous, its language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." Dyrdal v. Golden Nuggets, Inc., 672 N.W.2d 578, 586 (Minn. Ct. App. 2003). The court will not consider extrinsic evidence to ascertain the intentions of the parties absent an ambiguity. Prairie Island, 658 N.W.2d at 889.

Bickhaus urges the Court to consider the parties' intent and Bickhaus' affidavit as evidence that the Guaranty is ambiguous. The Court cannot, however, consider this extrinsic evidence because the language of the Guaranty does not contain an ambiguity. The Guaranty clearly states that the undersigned, Chris E. Bickhaus, is assuming all of the liabilities of the

Customer, Fastop. "Chris E. Bickhaus" is clearly typed above the signature line, indicating that Bickhaus, the individual, not Fastop, the corporation, is signing the Guaranty. Furthermore, the Guaranty clearly contemplates two separate and distinct parties, in that Paragraph 5 of the Guaranty specifically provides "[a]ll liabilities of the Customer, *and* of the *undersigned*, shall mature immediately upon insolvency of the Customer, the commission of an act of bankruptcy by the Customer …" (emphasis added). This language is reasonably susceptible to one interpretation: Bickhaus is personally liable for the debts of the corporation, Fastop. Any other interpretation of the Guaranty renders it meaningless. See Johnson Bros. Wholesale Liquor Co. v. Ottos' Liquor, Inc., 194 N.W.2d 592, 592 (Minn. 1972) (no purpose is served by a company guaranteeing its own debt). Such an interpretation would invalidate the entire Guaranty since then no one would have assumed secondary liability for Fastop's debt. See In the Matter of L & S Indus., Inc., 989 F.2d 929, 934 (7th Cir. 1993) (guarantor promises to answer for the debt of a *third party*); see also Midwest Great Dane Trailers, Inc. v. Great Dane Lmtd. Partnership, 977 F.Supp. 1386, 1389 (D. Minn. 1997) ("provisions of a contract should … be read as consistent with each other so that no part of the agreement is rendered unreasonable or superfluous").

Under the plain and ordinary meaning of the Guaranty's language, Bickhaus, the third party, is assuming the debt of the indebted party, Fastop. As previously stated, it is clear from the language in the Guaranty that two separate and distinct entities are referenced in the Guaranty. Paragraph 5 of the Guaranty clearly provides "[a]ll liabilities of the Customer, *and* of the *undersigned*, shall mature immediately upon insolvency of the Customer, the commission of an act of bankruptcy by the Customer …" (emphasis added). It is an unreasonable construction of the language to conclude that Fastop secured its own debt. See id. (describing construction urged by party that was inconsistent with the language of the agreement as "creative but without

merit"). Because there is no ambiguity in the Guaranty, the Court cannot consider extrinsic evidence. As a matter of law, the Guaranty demonstrates that Bickhaus assumed personal liability for Fastop's debt.

For each of these reasons, and the reasons asserted in CHS's Motion for Summary Judgment, CHS is entitled to summary judgment.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By    /s/ Dawn M. Johnson   
     Dawn M. Johnson (Ill. Bar #06126582)
     Lead Counsel
     10 South Broadway, Suite 2000
     St. Louis, Missouri 63102
     (314) 241-9090
     (314) 241-4245 (fax)
     email: dmj@greensfelder.com

     Attorneys for Plaintiff CHS Inc., formerly known as Cenex Harvest States Cooperatives

## **CERTIFICATE OF SERVICE**

I hereby certify that on the _____ day of December, 2004, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**David G. Penn, Esq.**
Schmiedeskamp, Robertson, Neu & Mitchell
Attorneys for Defendant
525 Jersey Street
P.O. Box 1069
Quincy, Illinois 62306-1069

                                    /s/ Dawn M. Johnson