E-FILED
Tuesday, 18 January, 2005  04:43:49 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CHS INC., formerly known as CENEX HARVEST STATES COOPERATIVES, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Cause No.: 03-3263 ) |
| CHRISTOPHER BICKHAUS, | ) ) ) |
| Defendant. | ) |

**PLAINTIFF CHS INC., F/K/A CENEX HARVEST
STATES COOPERATIVES' TRIAL BRIEF**

Pursuant to Local Rule 16.1(E)(8), Plaintiff CHS Inc., formerly known as Cenex Harvest States Cooperatives ("CHS"), by its undersigned attorneys, hereby submits its pre-trial brief.

## INTRODUCTION

As set forth in CHS's Motion for Summary Judgment, this Court can determine – as a matter of law – in what capacity Defendant Christopher Bickhaus ("Bickhaus") signed the guaranty at issue. Case law and the plain and unambiguous terms of the guaranty show that Bickhaus is personally liable for the debt of Fastop, Inc. ("Fastop"), despite the fact that he argues that he signed it in his capacity as president of Fastop. If the Court determines as a matter of law that Bickhaus is personally liable for Fastop's debt, this Court need only hear testimony of CHS' damages, although CHS believes it is undisputed as to how much is owed to CHS.

## FACTUAL BACKGROUND

At all relevant times herein, Fastop was engaged in, among other things, the retail marketing of gasoline and diesel fuel to the public via retail sites, generally referred to as convenience stores, in the states of Illinois and Missouri. Defendant Bickhaus owns, or owned at all relevant times herein, all of the capital stock of Fastop.

In May 2002, CHS and Fastop entered into a business relationship, wherein CHS agreed to sell to Fastop, and Fastop agreed to purchase from CHS, energy products, including, but not limited to, gasoline and diesel fuel. Fastop agreed to resell these energy products at certain of Fastop's convenience stores. During the course of their business relationship, Fastop became indebted to CHS pursuant to the terms of two promissory notes executed by Fastop and pursuant to the terms of a Participation Agreement executed by Fastop.

The core issue in this case is whether Defendant Bickhaus is personally liable to CHS for such indebtedness of Fastop pursuant to the clear and unambiguous terms of a Guaranty of Credit (the "Guaranty") signed by Bickhaus. Whether Bickhaus is personally liable for Fastop's indebtedness to CHS is a question of law for the Court to decide. As shown below, Bickhaus is personally liable for such indebtedness pursuant to relevant case law. Therefore, judgment should be entered in favor of CHS as to Bickhaus' liability for Fastop's indebtedness pursuant to the terms of the Guaranty.

In the event this Court finds Bickhaus liable to CHS for Fastop's indebtedness pursuant to the terms of the Guaranty, then CHS seeks judgment as to the amount of damages owed to CHS by Bickhaus. There is no genuine issue of material fact as to the amount of indebtedness owed to CHS by Fastop pursuant to the terms of the two promissory notes and the Participation

Agreement executed by Fastop. Therefore, this Court should also enter judgment in favor of CHS as to the amount of damages sought in CHS' First Amended Complaint.

In the interests of avoiding unnecessary briefing, CHS incorporates by reference the factual background of this case as presented in CHS' Memorandum in Support of its Motion for Summary Judgment filed on October 6, 2004, and in CHS' Reply Memorandum in Support of its Motion for Summary Judgment filed on December 3, 2004.

## ARGUMENT

### I.   Minnesota law controls the outcome of this case.

Before reaching the merits of this case, the Court must decide which state's law applies. Here, the Guaranty at issue contains a choice-of-law provision, stating that "This Agreement, and all rights, obligations, and duties hereunder, and all disputes which may arise hereunder, shall be construed in accordance with, and governed by, laws of the State of Minnesota, without giving effect to the conflict of laws provisions thereof."

"Illinois respects a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." Thomas v. Guardsmark, Inc., 381 F.3d 701, 705 (7th Cir. 2004). Bickhaus has argued that the Guaranty is invalid because it is ambiguous. However, even if the Guaranty contains an ambiguity, which CHS maintains it does not, the Guaranty is nonetheless valid – as is the case with most contracts which contain an ambiguity. Because the Guaranty is valid, its choice-of-law provisions apply, and Minnesota law controls the current dispute, as stated in the Guaranty.

Furthermore, giving effect to the choice-of-law provision will not violate any fundamental public policy in Illinois. Illinois courts invalidate choice of law provisions on the basis of public policy only sparingly. Scentura Creations, Inc. v. Long, 325 Ill.App.3d. 62, 69,

769380v1                                    3

756 N.E.2d 451, 457 (Ill. Ct. App. 2d Dist. 2001) (quoting McAllister v. Smith, 17 Ill. 328, 334 (Ill. 1856) (holding "the law of the chosen forum should be given effect 'where it is not dangerous, inconvenient, immoral, nor [sic] contrary to the public policy of the local government'")).  Applying Minnesota law, which Chris Bickhaus, either in his individual capacity or as a representative of Fastop, agreed would apply by signing the Guaranty, will not be dangerous, inconvenient, immoral, or contrary to the public policy of the State of Illinois. Therefore, the choice-of-law provision contained within the Guaranty should be given effect.

## II. *Bickhaus' Liability Pursuant to Guaranty of Credit*

The evidence will show that on or about October 30, 2002, Bickhaus executed and delivered the Guaranty to CHS.  By executing this Guaranty, the signatory clearly agreed that the Guaranty was for the benefit of CHS to induce CHS to grant credit or assume a credit risk in respect to the sales of goods made by CHS to Fastop, or in respect of any type of transaction by which CHS may become the creditor of Fastop.  By executing the Guaranty, the signatory also agreed that the guarantor's obligation is an unconditional obligation and covers all existing and future indebtedness of Fastop to CHS.  The evidence will show that the obligations clearly stated in the Guaranty impose upon the signatory an obligation to pay Fastop's indebtedness to CHS when due.  The only evidence cited by Bickhaus to argue that he is not personally liable is the manner in which he executed the Guaranty:  "Chris Bickhaus as President Fastop Inc."

In the current case, Bickhaus is the guarantor and is personally liable even though he signed the Guaranty "Chris Bickhaus as President Fastop Inc."  Under Minnesota law, the debtor does not become a party to the guaranty, and the guarantor is not a party to the principal obligation.  Charmoll Fashions, Inc. v. Otto, 248 N.W.2d 717, 719 (Minn. 1976).  "The undertaking of the former [debtor] is independent of the promise of the latter [guarantor]; and the

responsibilities which are imposed by the contract of guaranty differ from those which are created by the same contract to which the guaranty is collateral." Id.

In Charmoll, the guaranty defined the principal corporate debtor as "the Borrower." Charmoll, 248 N.W.2d at 721. Likewise, the current Guaranty defines Fastop, Inc., as the "Customer." In Charmoll, the court clearly distinguished the principal obligation of the borrower/customer under the terms of the underlying agreement from the primary obligation of the guarantors under the terms of the guaranty. Charmoll, 248 N.W.2d at 719-20. An obligation of a guarantor is "primary" such that the holder of the note can sue the guarantor upon default of the borrower without the necessity of an action against the borrower. Id. at 720. As in Charmoll, the Guaranty executed by Bickhaus describes Bickhaus' obligation as "a primary and unconditional obligation, and covers all existing and future indebtedness of the Customer to CHS. This obligation shall be enforceable before or after proceeding against the Customer . . . and shall be effective regardless of the solvency or insolvency of the Customer." The Guaranty specifically explains the separate obligations imposed on Fastop and Bickhaus. By identifying Fastop as the Customer, it specifically notes that Fastop is the underlying debtor. The Guaranty also specifically alerts Bickhaus that, by executing this Guaranty, he is assuming an obligation of Fastop.

Based on the holding in Charmoll, Fastop cannot be liable under the Guaranty since it is the debtor on the underlying obligations and is not a party to the Guaranty that Bickhaus signed. Charmoll, 248 N.W.2d at 719. By signing the Guaranty, Bickhaus assumed a personal obligation for Fastop's indebtedness to CHS. Thus, applying the court's rationale in Charmoll clearly demonstrates that Bickhaus is personally liable under the Guaranty.

Furthermore, Bickhaus could not have signed the Guaranty on behalf of Fastop since "[n]o purpose would be served by a corporation guaranteeing its own debt." Johnson Bros. Wholesale Liquor Co. v. Ottos' Liquor Inc., 194 N.W.2d 592, 592 (Minn. 1972). See also McBride Electric, Inc. v. Putt's Tuff, Inc., 685 P.2d 316, 320-21 (Kan. Ct. App. 1984) (finding individuals personally obligated as guarantors on corporate debt, and stating that "[d]efendants' argument that the inclusion of their corporate titles behind their signatures prevents their being personally liable is also without merit" because accepting such an argument "would elevate form over substance" and would "have the untenable result of making the guarantor of the note the same corporation which was primarily liable thereon"); Kordick v. Merchants Nat'l Bank and Trust Co., 496 N.E.2d 119, 124 (Ind. Ct. App. 1986) (although individual signed guaranty as "Robert C. Roy, Pres.," he was personally liable since it would be "meaningless for [the corporation] to guarantee its own debt because it would add nothing to its existing obligation"); Boise Cascade Corp. v. Stonewood Dev. Corp., 655 P.2d 668, 669 (Utah 1982) (corporate representative was personally liable after signing a guaranty since any other interpretation "would result in an absurdity, i.e., that the principal obligor was also the guarantor of his own obligation"); Appliance and Heating Supply, Inc. v. Telaroli, 682 P.2d 867, 868 (Utah 1984) (finding that president of company who signed agreement to pay amounts due if company defaulted was not absolved from personal liability, even though he signed agreement followed by the word "president"); Amoco Oil Company, n/k/a BP Products North America Inc. v. Premium Oil Company, Case No. 2:02CV00765 DS, p.18-19 (D.C. Utah, Feb. 26 2004) (holding "[t]he Unlimited Guaranties clearly make a distinction between the 'Debtor' and the 'Undersigned' which indicates that Amoco was not accepting a guaranty from Premium, defined in the

Unlimited Guaranties as the 'Debtor.'" Thus, even though the signature was "as president," the individual defendant was personally liable for indebtedness of the debtor).[1]

Furthermore, any interpretation that does not find Bickhaus personally liable for the obligations of Fastop ignores the plain language of the Guaranty and essentially renders the entire document meaningless. The plain language of the Guaranty makes Bickhaus liable to CHS for the full amount of Fastop's obligations or indebtedness to CHS. The Guaranty clearly states that the undersigned, Chris E. Bickhaus, is assuming all of the liabilities of the Customer, Fastop. "Chris E. Bickhaus" is clearly typed above the signature line, indicating that Bickhaus, the individual, not Fastop, the corporation, is signing the Guaranty. Bickhaus did not modify this indication in any way. Furthermore, the Guaranty clearly contemplates two separate and distinct parties, in that Paragraph 5 of the Guaranty specifically provides "[a]ll liabilities of the Customer, *and* of the *undersigned*, shall mature immediately upon insolvency of the Customer, the commission of an act of bankruptcy by the Customer …" (emphasis added). Any reasonable person would understand that, by signing the Guaranty, he or she was creating personal liability under the Guaranty. "People who sign documents which are plainly written must expect to be held liable thereon." Jenista v. Burlington Northern Airmotive, Inc., 388 N.W.2d 770, 773 (Minn. Ct. App. 1986) (quoting Watkins Products, Inc. v. Butterfield, 144 N.W.2d 56, 58 (Minn. 1966). Indeed, "the language of the guaranty specifically negates the signature as having been made in a representative capacity, and [the individual] was personally obligated on the guaranty agreement." Kordick, 496 N.E.2d at 124.

---

[1] A copy of the Memorandum Opinion and Order in Amoco Oil Company, n/k/a BP Products North America Inc. v. Premium Oil Company is attached hereto as **Exhibit 1** and incorporated by reference.

The language of the Guaranty unambiguously evidences Bickhaus' personal liability. Under these circumstances, signing an agreement in a representative capacity does not create an ambiguity. Although Bickhaus is now claiming that his signature is in his corporate capacity, courts will not construe such a signature as that of the corporation in light of the clear and unambiguous terms of the Guaranty, because such an interpretation "would … have the untenable result of making the guarantor of the note the same corporation which was primarily liable thereon. Such a promise of guaranty would be illusory only." McBride, 685 P.2d at 320-21; Ricker v. B-W Acceptance Corp., 349 F.2d 892, 895 (10th Cir. 1965) (finding that guaranty's language that the "undersigned" had personally guaranteed debt of the company manifested an intent to bind the company president personally and that the company guaranteeing its own debt "would add nothing to its existing obligations" and "would serve no purpose").

Accordingly, it is clear from Minnesota law and case law from other jurisdictions that, as a matter of law, Bickhaus guaranteed Fastop's debt in his individual capacity even though he wrote "as President Fastop Inc." after he signed his name, and Bickhaus is personally liable for all of Fastop's indebtedness to CHS. Therefore, judgment should be entered in favor of CHS as to Bickhaus' personal liability under the Guaranty.

**III.    *Fastop's Indebtedness to CHS***

In the event this Court finds Defendant Bickhaus is liable to CHS for Fastop's indebtedness pursuant to the terms of the Guaranty executed by Bickhaus, then CHS seeks judgment in its favor as to the amount of Fastop's indebtedness under the June 14, 2002 Note, the March 26, 2003 Note and the Participation Agreement.

The evidence will show that Fastop's indebtedness to CHS stems from Fastop's breach of the foregoing contracts with CHS. Under Minnesota law, in order to show a breach of contract by Fastop, CHS must prove (a) the formation of the contract; (b) performance by plaintiff of any conditions precedent to its right to demand performance by defendant; (c) a breach of the contract by defendant, and (d) resulting damages. <u>Briggs Transp. Co. v. Ranzenberger</u>, 217 N.W.2d 198, 200 (Minn. 1974); <u>Buchman Plumbing, Inc. v. Regents of Univ. of Minnesota</u>, 215 N.W.2d 479, 486 (Minn. 1974). The evidence will establish that Fastop breached the two promissory notes by failing to make full and final payment when due, and breached the Participation Agreement by refusing to pay back the amount owed to CHS for failing to meet the First Year volume estimate of 11,000,000 gallons.

      A.    <u>*Breach of Promissory Notes*</u>

Bickhaus does not dispute that Fastop executed the June 14, 2002 Note for value received. Fastop promised to pay to the order of CHS the principal sum of Seventy Thousand & Five Hundred Dollars ($70,500.00), together with interest on the unpaid principal amount at the rate of six percent (6.00%) per annum. The underlying indebtedness evidenced by the June 14, 2002 Note arose from funds advanced to Fastop by CHS in connection with Fastop's agreement that the petroleum image elements of the seventeen convenience stores referred to in the First Amended Complaint as the Cenex-Identified Sites would be branded CENEX. CHS delivered to Fastop the full amount of $70,500.00 in the form of a corporate check. The entire remaining balance on the June 14, 2002 Note, including accrued interest, was due and payable in full on or before July 15, 2003. The evidence will show that after all just credits were given, the entire remaining balance owed on the June 14, 2002 Note was $31,120.89. Fastop has failed to pay any portion of the unpaid amount of $31,120.89 on the June 14, 2002 Note. Failure to pay this

amount on or before July 15, 2003 resulted in Fastop's default under the terms of the June 14, 2002 Note, and CHS had the right to pursue legal or equitable remedies.

Bickhaus also does not dispute that Fastop executed the March 26, 2003 Note for value received, promising to pay to the order of CHS the principal sum of $1,360,697.83, together with interest from March 26, 2003, accruing at the rate of 12.0% per year on the unpaid principal amount until paid in full. The underlying indebtedness evidenced by the March 26, 2003 Note arose from the sales of refined fuel products to Fastop by CHS for which Fastop failed to pay when due. The March 26, 2003 Note included a payment schedule that set forth the amounts and due dates of periodic payments to be paid by Fastop to CHS. The final payment on the March 26, 2003 Note was due on June 27, 2003. Fastop has failed and refused to pay any portion of the unpaid amount of $1,243,553.13 on the March 26, 2003 Note. Failure to pay the amount on or before June 27, 2003, resulted in Fastop's default under the terms of the March 26, 2003 Note, and CHS had the right to pursue legal or equitable remedies.

The evidence will show that Fastop breached the two promissory notes with CHS by failing to pay the remaining balances when due in accordance with the terms of the two promissory notes. These two promissory notes are valid, ordinary money contracts, where the consideration has passed and CHS has performed all of its obligations. First State Bank of Floodwood v. Jubie, 86 F.3d 755, 760 (8th Cir. 1996) (applying Minnesota law). CHS has shown (a) the formation of the contracts; (b) performance by plaintiff; (c) a breach of the contracts by Fastop, and (d) resulting damages. Briggs, 217 N.W.2d at 200; Buchman Plumbing, 215 N.W.2d at 486. Thus, CHS has established all the essential elements of a breach of contract by Fastop, and CHS is permitted to pursue any damages that naturally and necessarily result from such breach. Logan v. Norwest Bank, 603 N.W.2d 659, 663 (Minn. Ct. App. 1999).

B.  *Breach of Participation Agreement*

Bickhaus also does not dispute that CHS advanced $275,000.00 to Fastop pursuant to the terms of the Participation Agreement. The evidence will show that this amount is equal to $0.025 per gallon multiplied by Fastop's estimate of the gallons of refined fuel products it would purchase from CHS in the First Year (11,000,000 gallons). Fastop failed to perform its obligation to purchase 11,000,000 gallons of refined fuel products from CHS during the First Year by actually purchasing only 4,880,487 gallons of refined fuel products from CHS in the First Year. As a result, Fastop was only entitled to receive incentive money from CHS for the First Year in the amount of $122,012.18 (4,880,487 gallons x $0.025 per gallon), and, as such, received an overpayment of $152,987.82. Pursuant to the Participation Agreement, Fastop understood that "if 1st year volumes are not met, [CHS] will have the option to bill back a portion of any up-front image funds provided." Therefore, Fastop was obligated to reimburse CHS the amount of the overpayment pursuant to the Participation Agreement. Failure to reimburse CHS the amount of $152,987.82 resulted in a breach of the Participation Agreement and a benefit to Fastop to which it was not entitled.

With regard to the Participation Agreement, the evidence will show: (a) the formation of the contract; (b) performance by plaintiff; (c) a breach of the contract by Fastop; and (d) damages. <u>Briggs</u>, 217 N.W.2d at 200; <u>Buchman Plumbing</u>, 215 N.W.2d at 486. Thus, CHS has established all the essential elements of a breach of contract by Fastop, and CHS is permitted to pursue any damages that naturally and necessarily result from such breach. <u>Logan v. Norwest Bank</u>, 603 N.W.2d 659, 663 (Minn. Ct. App. 1999).

**CONCLUSION**

As set forth above and in its Motion for Summary Judgment, Memorandum of Law in Support and Reply Memorandum in Support, CHS Inc., formerly known as Cenex Harvest States Cooperatives, is entitled to judgment as a matter of law as to Defendant Bickhaus' personal liability for Fastop's indebtedness pursuant to the terms of the Guaranty, based on the evidence that will be presented at the trial of this matter. In the event that this Court finds Defendant Bickhaus is liable to CHS for the indebtedness of Fastop pursuant to the Guaranty, then CHS requests judgment as to the amount of damages owed to CHS by Bickhaus of (1) $31,120.89, plus interest, pursuant to the June 14, 2002 Note; (2) $1,243,553.13, plus interest, pursuant to the March 26, 2003 Note; and (3) $152,987.82 pursuant to the Participation Agreement). Either through evidence at trial or through a post-judgment Motion for Attorneys' Fees and Costs, and with approval of the Court, CHS will submit evidence of its attorneys' fees and costs incurred in this matter that are properly recoverable pursuant to the terms of the Guaranty.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.


By     /s/ Dawn M. Johnson
    Dawn M. Johnson  (Ill. Bar #06126582)
    Lead Counsel
    10 South Broadway, Suite 2000
    St. Louis, Missouri  63102
    (314) 241-9090
    (314) 241-4245 (fax)
    email: dmj@greensfelder.com

    Attorneys for Plaintiff CHS Inc., formerly known as
    Cenex Harvest States Cooperatives

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 18th day of January, 2005, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**David G. Penn, Esq.**
Schmiedeskamp, Robertson, Neu & Mitchell
Attorneys for Defendant
525 Jersey Street
P.O. Box 1069
Quincy, Illinois  62306-1069

                                                                 /s/ Dawn M. Johnson