IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CHS INC., formerly known as CENEX HARVEST STATES COOPERATIVES, | ) ) ) ) |
| Plaintiff, | ) ) ) Cause No.: 03-3263 |
| vs. | ) ) |
| CHRISTOPHER BICKHAUS, | ) ) |
| Defendant. | ) |

**PLAINTIFF CHS INC., f/k/a CENEX HARVEST STATES COOPERATIVES'
MEMORANDUM OF LAW IN SUPPORT OF SECOND MOTION IN LIMINE TO
EXCLUDE EVIDENCE OF CERTAIN ALLEGED CONDUCT OCCURRING
AFTER THE GUARANTY WAS SIGNED**

This Memorandum of Law is submitted by Plaintiff CHS Inc., formerly known as Cenex Harvest States Cooperatives ("CHS"), by its undersigned counsel, and, pursuant to the Federal Rules of Evidence and applicable law, in support of its Second Motion in Limine seeking to prohibit Defendant Christopher Bickhaus ("Bickhaus") from introducing any evidence, testimony, statements and/or argument in trial regarding certain irrelevant matters, including, but not limited to, certain alleged conduct by Bickhaus and/or employees of CHS which occurred *after* Bickhaus executed the Guaranty of Credit (the "Guaranty").

**ARGUMENT**

A.  **Motion in *Limine* Standard**

There are trial management benefits to a motion in *limine* that are equally applicable to a bench or jury trial. As the Supreme Court explained, "Although the Federal Rules of Evidence do not explicitly authorize in *limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41

n.4, 105 S. Ct. 460 (1984). In its decision in Luce, the Sixth Circuit Court of Appeals suggested that the primary purposes of an in *limine* ruling are to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues. United States v. Luce, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38, 105 S. Ct. 460 (1984). As explained more fully and more recently by the Seventh Circuit Court of Appeals in Jonasson:

> The motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings. It performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissable [sic] for any purpose. The prudent use of the in limine motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury.

Jonasson v. Lutheran Child and Family Services, 115 F.3d 436, 440 (7th Cir. 1997); see also Palmieri v. Defaria, 88 F.3d 136, 141 (2nd Cir. 1996) ("The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'") (quoting Banque Hypothecaire Du Canton De Geneve v. Union Mines, 652 F. Supp. 1400, 1401 (D. Md. 1987)). These observations concerning the virtues of trial management and clarification of the focus upon pertinent issues that can be gained from a motion in *limine* are just as applicable when the trial court, rather than a jury, is the finder of fact. Estate of Rick v. Stevens, 2002 U.S. Dist. LEXIS 12404, 9-10 (D. Iowa 2002).

### B.    Irrelevant Evidence Should be Excluded

Bickhaus included the following alleged statements of fact in his Response to CHS' Motion for Summary Judgment; which CHS believes Defendant will attempt to introduce at trial:

> 6.    The Plaintiff, in a letter to Christopher Bickhaus dated June 20, 2003, asked Bickhaus to sign another guaranty, this time explicitly referred to it as a "personal guaranty" of Fastop's debt.

> 7. Bickhaus never signed the proposed personal guaranty requested by the Plaintiff on June 20, 2003.
>
> 8. The Plaintiff provided a form for the personal guaranty requested on June 20, 2003, which differs from the 2002 guaranty by explicitly noting above the signature line that Bickhaus, had he signed, would have signed the new guaranty in his individual capacity to personally guaranty the debt.

See Bickhaus' Response to Plaintiff's Motion for Summary Judgment, p. 7-8. Similarly, Bickhaus stated the following by affidavit:

> 9. On more than one occasion in July and August 2003, I had a telephone conversation with Scott Beiswenger, a representative of CHS, where I informed Scott Beiswenger that I signed the 2002 guaranty only as Fastop's representative, not in my personal capacity. Beiswenger directly asked me if I signed the 2002 guaranty in my personal capacity. I reiterated that I did not intend to be personally liable, did not sign the 2002 guaranty in my personal capacity, and specifically intended and did execute the 2002 guaranty in my capacity as an officer of Fastop. My attorney, Michael A. Bickhaus, was also present during at least one of these conversations.
>
> 11. In a letter dated June 20, 2003, CHS asked me to sign another guaranty, this time as a personal guaranty of Fastop's debt. I never signed the new guaranty requested by CHS.
>
> 12. The new guaranty that CHS asked me to sign on June 20, 2003 is different from the guaranty I signed as President of Fastop in 2002. The form I was asked to sign on June 20, 2003 explicitly provides that I would have signed in my individual capacity, which I did not want to do.

See Affidavit of Christopher Bickhaus, ¶ 9, 11-12, attached to Bickhaus' Response to Plaintiff's Motion for Summary Judgment.

The events outlined in these statements occurred, if at all, *after* the Guaranty was signed. Thus, evidence of each of the foregoing is irrelevant and inadmissible at trial because such evidence does not have any tendency to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without the evidence. See Federal Rule of Evidence 401. Therefore, evidence of the above statements,

769270v1

3

which occurred *after* the Guaranty was signed, is inadmissible in this trial pursuant to Federal Rules of Evidence 401 and 402.

Furthermore, as stated in CHS' First Motion in Limine, Bickhaus' alleged intent when he executed the Guaranty is irrelevant and inadmissible because this Court cannot consider extrinsic evidence of the parties' intent where there is an unambiguous agreement.  See Prairie Island Indian Cmty. v. Minnesota Dept. of Pub. Safety, 658 N.W.2d 876, 889 (Minn. Ct. App. 2003).[1]

### CONCLUSION

For all of the foregoing reasons, CHS respectfully requests that this Honorable Court enter an order granting CHS's Second Motion in Limine and exclude from the trial all evidence, testimony, statements, or argument concerning certain alleged conduct by Bickhaus and/or employees of CHS which occurred *after* Bickhaus executed the Guaranty, and for further relief as this Court deems just and proper.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By    /s/ Dawn M. Johnson

Dawn M. Johnson  (Ill. Bar #06126582)
Lead Counsel
10 South Broadway, Suite 2000
St. Louis, Missouri  63102
(314) 241-9090
(314) 241-4245 (fax)
email: dmj@greensfelder.com

Attorneys for Plaintiff CHS Inc., formerly known as Cenex Harvest States Cooperatives

---

[1] As more fully outlined in CHS' Motion for Pre-Trial Ruling on Choice-of-Law Provision, filed contemporaneously herewith, Minnesota law applies to the issues in this case pursuant to the choice-of-law provision contained in the Guaranty.

5

## CERTIFICATE OF SERVICE

      I hereby certify that on the 18th day of January, 2005, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**David G. Penn, Esq.**
Schmiedeskamp, Robertson, Neu & Mitchell
Attorneys for Defendant
525 Jersey Street
P.O. Box 1069
Quincy, Illinois 62306-1069

                                                  /s/ Dawn M. Johnson